1    TSE, Ho Keung ;

2    P.O.Box 80306,

3    Cheung Sha Wan Post Office,

4    Hong Kong.

5    tse2012@sina.com

6    608.268.3667

7

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11    _____

|  |  |
|---|---|
| 12   HO KEUNG, TSE | ) |
| 13   P.O. BOX 80306 | ) |
|       CHEUNG SHA WAN POST OFFICE | ) |
| 14   HONG KONG | ) |
|       eMail : hktse2007@Gmail.com | )  Consolidated Civil Action No. : C06-06573 SBA |
| 15   US Tel: (608) 268-3667 | ) |
|  | ) |
| 16   Plaintiff | )  **FIRST AMENDED CONSOLIDATED** |
|  | )  **COMPLAINT** |
| 17 |  )  **- FOR PATENT INFRINGEMENT** |
|  | )  **AND PRAY FOR INJUNCTIVE RELIEF** |
| 18          vs | ) |
|  | )  <u>JURY TRIAL DEMANDED</u> |
| 19   APPLE, INC., | ) |
|       1 Infinite Loop, | ) |
| 20   Cupertino, California 95014 | ) |
| 21   USA, | ) |
|  | ) |
| 22   MUSICMATCH, INC. | ) |
|       16935 W. Bernardo Dr. | ) |
| 23   San Diego, California 92127, | ) |
|  | ) |
| 24   SONY NETWORK ENTERTAINMENT | ) |
| 25   INTERNATIONAL LLC | ) |
|       6080 Center Drive, 10th Floor | ) |
| 26   Los Angeles, CA 90045, | ) |
|  | ) |
| 27         Defendants | ) |
| 28   _____ | ) |

FIRST AMENDED CONSOLIDATE COMPLAINT                C06-06573 SBA  P.1

**INTRODUCTION**

As of to date, the instant case is still **STAYED**.

Plaintiff notes that, in Apple's response to issuance of notice of certificate of correction (Dkt. 188), Apple demanded (last paragraph) that "Still uncorrected, however, are independent claims 21 and 23. Because Mr. Tse is attempting to assert claim 23 in this action, Apple's motion to stay is not moot. The case should be stayed until such time as all asserted claim are corrected."

However, **NO PARTY** has requested the United States Patent and Trademark Office for any correction on claims 21 and 23, including Apple itself. Apple's allegations of claim errors is baseless, so is its demand for maintaining stay.

This amended complaint is filed in pursuant to the Court's Order (Dkt. 204) for consolidating cases 06-06573 SBA and 12-02653 SBA.

Plaintiff, Ho Keung Tse ("Plaintiff"), files this amended Complaint against Apple, Inc. ("Apple"), Musicmatch, Inc. ("Musicmatch") and Sony Network Entertainment International LLC. ("SNE"), referred to as "Defendants"[1], as follows:

---

[1] In the original complaint, defendant Apple Computer, Inc. has been renamed as Apple on January 9, 2007, Inc., defendant Sony Connect also recently has been renamed as "Sony Network Entertainment International LLC.", for detail, refer to Dkt. 181, "NOTICE OF DEFENDANT SONY CONNECT INC.'S NAME CHANGE"). Defendant RealNetworks has been dismissed by an Order granting stipulation of dismissal with prejudice, Dkt. 193, and defendant Napster has been dismissed by another Order granting stipulation of dismissal with prejudice, Dkt. 206.

1

**PLAINTIFF'S OTHER LAWSUITS**

2

**eBay Action :**

3      It involves infringement of the same US Patent 6665797, using the user identity

4 verification technologies covered under the '797 Patent to verify the identity of bidders, to

5 prevent bid shilling in Internet Auctions, as well as to verify identities of free trial users, in

6 providing Internet services.

7      Describe the lawsuit :

8      a.      Date of filing lawsuit : December, 9, 2009

9      b.      Plaintiff        : Ho Keung, TSE

10      Defendants      : eBay Inc. ("eBay"), uBid, Inc. ("uBid"), and America Online Inc.

11 ("AOL").

12      c.      Court:  Initially filed with the United States District Court for Eastern District of

13 Texas, later transferred to the United States District Court for Northern District of California on

14 April 14, 2011.

15      d.      Docket Number: 2:09-cv-00380-TJW in Eastern Texas: 3:11-cv-01812-WHA in

16 Northern California.

17      e.      Name of Judge to whom the case was assigned: Judge John Ward in Eastern Texas;

18            Judge William Alsup in Northern California.

19      f.      Disposition : Nil.

20      g.      Status : DISMISSED WITHOUT PREJUDICE to refiling after final determination

21 of the validity of the claims of United States patent number 6,665,797 and issuance of a

22 reexamination certificate, by order of Judge William Alsup on August 29, 2011. The effect of this

23 order should be in respect of the single asserted claim 21 and Defendants of the second action

24 only, as Judge William Alsup incorrectly decided that the claim 21 as amended in Reexamination

25 (control number : 90/008,772) contains substantive changes (without any claim construction) and

26 dismissed the case, for reason as "original patented claim 21 was cancelled in July 2009 — five

27 months before this action was filed — and the amended version of claim 21 has not yet issued".

28

1

**Google Action :**

2        It involves infringement of the same US Patent 6665797, using the user identity

3   verification technologies covered under the '797 Patent, to protect *application programs ("Apps")*

4   sold via Internet from unauthorized use.

5        Describe the lawsuit :

6        Date of filing lawsuit : May, 30, 2012

7        a.        Plaintiff        : Ho Keung, TSE

8        b.        Defendant        : Google, Inc., Samsung Telecommunications America, L.L.C.,

9   HTC America, Inc.

10       c.        Court:  Initially filed with the United States District Court for Eastern District of

11   Texas, later transferred to the United States District Court for Northern District of California on

12   Jan 15, 2013.

13       d.        Docket Number: 6:12-cv-00356 LED in Eastern Texas; 3:13-cv-00194 SI in

14        Northern California.

15       e.        Name of Judge to whom the case was assigned: Judge Leonard Davis in Eastern

16   Texas; Judge Susan Illston in Northern California.

17       f.        Disposition : Nil.

18       g.        Status: The case is ongoing.

19

20

21

22

23

24

25

26

27

28

**NATURE OF THE PRESENT ACTION**

1. This is a patent infringement action to stop Defendants' infringement of Plaintiff's United States Patent No. 6,665,797 (the " '797 Patent", a copy of which is attached hereto as Exh. A), entitled "Computer Apparatus/Software Access Right Management" (corrected by Certificate of Correction dated January 3, 2006, see Exh. A). Plaintiff is the sole owner of United States Patent Number 6,665,797. Plaintiff seeks injunctive relief and monetary damages.

**STATUS SOLE PATENT-IN-SUIT**

2. The '797 patent has gone through a reexamination (control number : 90/008,772) before the United States Patent and Trademark Office (PTO), jointly requested by Defendants.

3. The United State Patent and Trademark Office ("USPTO") issued a Reexamination Certificate for the sole patent-in-suit, US Patent 6665797, on August 7, 2012, refer to Dkt. 179.

4. Plaintiff filed with the USPTO a request for certificate of correction of claim 1, in Sept, 2012. And on Nov 27, 2012, Plaintiff withdrew the certificate of correction. For details, please refer to Dkt. 200.

5. The USPTO amended claims 1, 3 on Dec 4, 2013, *sua sponte*.

**PARTIES**

6. Plaintiff is the sole inventor, sole patentee and sole owner of the '797 Patent duly and legally issued by the United States Patent and Trademark Office on December 16, 2003. Plaintiff owns and has at all times owned and has standing to sue for infringement of '797 Patent.

7. Upon information and belief, Defendant Apple, Inc. (formerly Apple Computer, Inc., renamed as Apple, Inc. on January 9, 2007) is a corporation duly organized and existing under the laws of the state of California and has a principal place of business at 1 Infinite Loop, Cupertino, California 95014.

8. Upon information and belief, Defendant MusicMatch was wholly owned by Yahoo! Inc., now closed down. MusicMatch once existed under the laws of the State of California and had a headquarter of business at 5 W. Bernardo Dr., San Diego, California 92127.

9.     Upon information and belief, Defendant Sony Network Entertainment International LLC. (formerly Sony Connect, Inc.) is a corporation duly organized and existing under the laws of the State of California and had a headquarter of business at 6080 Center Drive, 10th Floor, Los Angeles, CA 90045.

**JURISDICTION AND VENUE**

10.     This action arises under the Patent Laws of the United States, Title 35 United States Code, including but not limited to 35 U.S.C. § 271, 281, 283, 284, and 285.

11.     This Court has jurisdiction of this action under 28 U.S.C. § 1331 (federal question jurisdiction), 1338(a) (patent jurisdiction).

12.     Defendant Apple, upon information and belief, is in the business of, inter alia, importing and selling iProducts (iPod Touches, iPhones and iPads). Apple is also in the business of selling third party application programs, through its Internet virtual "App Store", for use on its iProducts.

13.      Upon information and belief, the Apple's infringing iProducts containing infringing Digital Rights Management (DRM) software and hardware, which works in a co-operative manner with other infringing DRM software and hardware of the App Store, iTunes Store, including but not limited to its Internet servers, for use in protecting from unauthorized use, digital items sold from Apple's App Store and iTunes Store, all covered under the claims of the '797 patent in suit.

14.     This Court has personal jurisdiction over Apple because Apple has established minimum contacts with the forum. Apple's infringing App Store and iTunes Store, sold/has offered to sell/has sold/sell and continue to sell or offers to sell, digital items, to states all over USA, including California and this district. Further, Apple's iProducts, are and have been used, offered for sale, sold, and purchased in the Northern District of California. Apple, directly and/or through its distribution network, places the iProducts within the stream of commerce directed at the Northern District of California, with the knowledge and/or understanding that such iProducts

1  will be sold in the Northern District of California. Venue is proper in this district pursuant to 28

2  U.S.C. §§ 1391(b), (c), and 1400(b).

3       15.    This Court has personal jurisdiction over Apple, also because that, Apple has

4  engaged/engages in soliciting, through its http://www.apple.com, third party developers in the

5  Northern District of California, to develop for and submit to Apple, application programs

6  executable on Apple's infringing iProducts only, for sales at App Store exclusively. Apple

7  protected the application programs from unauthorized use, by software and methods covered

8  under the '797 Patent, therefore constituting inducing those third party developers to participating

9  in and profit from infringing the '797 Patent.

10       16.    Defendant MusicMatch (later rebranded as Yahoo!Music), upon information and

11  belief, has once in the business of, inter alia, selling digital items (sound tracks, albums, videos,

12  etc) and offering music subscription service "MusicMatch on Demand", through its Internet

13  virtual Store "MusicMatch", accessible at http://www.MusicMatch.com, to states all over USA,

14  including California and this district.

15       17.    This Court has personal jurisdiction over Defendant MusicMatch, because it has

16  established substantial contacts with the forum. Venue is proper in this district pursuant to 28

17  U.S.C. §§ 1391(b), (c), and 1400(b).

18       18.    Defendant SNE (formerly "Sony Connect, Inc."), upon information and belief,

19  has/is in the business of selling digital items (sound tracks, videos, games etc), through its

20  Internet virtual Store "Sony Network Entertainment", accessible at

21  http://www.SonyEntertainmentNetwork.com.

22       19.    SNE, upon information and belief, sold/has offered to sell/has sold/sell and

23  continue to sell or offers to sell, through its website http://www.SonyEntertainmentNetwork.com,

24  digital items, to states all over USA, including California and this district.

25       20.    This Court has personal jurisdiction over Defendant SNE, because it has

26  established substantial contacts with the forum. Venue is proper in this district pursuant to 28

27  U.S.C. §§ 1391(b), (c), and 1400(b).

28

1

**THE CONCEPT OF INVENTION**

2     21.    As readable on the abstract of '797 patent, the concept behind the present invention

3 can be summarized as a method of "using the existence of the EI sub-program in a computer as a

4 precondition for authorising use of software products on that computer".

5     And, the EI program is for authorizing payment from an account of the rightful user of the

6 software products desired to be protected, and in the present invention, it is being used as a token

7 for identity verification only.

8     No payment is needed to be charged on the account.

9     Note that other payment information, such as a credit account password, may be used as

10 an alternative to the EI program. For details, please refer to the '797 Patent (Exh. A)

11     22.    The present invention is the cornerstone of Digital Rights Management ("DRM")

12 technologies of nowadays. Before it, purchased software is generally protected from unauthorized

13 use, by means of a piece of specific hardware, such as a dongle, not practical for Internet sales.

14

15

**COUNT I**

16

**INFRINGEMENT OF U.S. PATENT NO. 6665797**

17

**BY APPLE'S APP STORE AND PRODUCTS**

18     23.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-22 of

19 this Complaint as though fully set forth herein.

20     24.    Apple owns and operates a virtual Internet Store, called as "App Store".

21     25.    Apple has installed/installs an "App Store" application program (directly or

22 indirectly through third party manufacturers) in each of its iProducts ("iPod Touches, iPhones and

23 iPads"), before sold to users.

24

25 

26

27     26.    The "App Store" application program is for use by the users of Apple's iProducts

28 to access to Apple's Internet servers and create a virtual App Store on the screen of the iProducts.

27.     Apple sells application programs ("App") through the App Store, to users of the iProducts.

28.     Apple, through the virtual App Store, has required/requires users to submit information of their financial account, to open accounts with Apple, and each Apple account can be accessed by using a respective Apple ID and Password. The financial account may be a credit card or debit card account and the information submitted is for authorizing Apple to receive payment from the financial account.

29.     The Apple ID and Password is for use by an account holder to authorize Apple to make use of the financial account information he/she submitted, to receive payment from his/her financial account, for purchasing application programs from the App Store.

30.     Once an account holder has purchased an application program, he/she may download the same application program from the App Store, to any iProducts, without re-purchasing the application program, this is done by submitting his/her Apple ID and Password of the account used for making the purchase, through the iProduct, to Apple, for identity verification.

31.     The purchased App cannot be used on an iProduct ("iPod Touches, iPhones and iPads") other than the one used for making the purchase, unless the iProduct is authorized to execute the App. To authorize an iProduct, one has to submit his/her Apple ID and Password of the account used for making the purchase, through the iProduct, to Apple, for identity verification. Apple doesn't charge the account for the authorization.

32.     The DRM technology used in protecting the purchased Apps is Fairplay.

33.     Apple has engaged/is engaging in making and using Digital Rights Management (DRM) technologies, including but not limited to, servers of its Internet virtual "App Store", for practicing the methods covered under the claims of the '797 patent, for protecting from unauthorized use, application programs offered for sale or sold at its App Store.

34.     Apple has engaged/is engaging in importing, offering for sale, and selling in the United States, its iProducts with DRM technologies, including but not limited to the "App Store" application program installed thereon, for practicing the methods covered under the '797 patent,

1   for protecting from unauthorized use, application programs offered for sale or sold at its App

2   Store.

3       35.   Apple, by using the '797 patented invention, has without difficulty, successfully

4   built up its App Store as one of the greatest Internet Business, while inflicting irreparable harm to

5   Plaintiff.

6

7                              **COUNT II**

8   **APPLE INDUCES THIRD PARTY APPLICATION PROGRAM DEVELOPERS**

9              **INTO INFRINGING U.S. PATENT NO. 6665797**

10       36.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-35 of

11   this Complaint as though fully set forth herein.

12       37.   Apple, by using Digital Rights Management (DRM) software and methods covered

13   under the claims of the '797 patent, to protect purchased application programs from use by an

14   unauthorized user, Apple has infringed/infringing on the '797 patent directly itself, while at the

15   same time, has induced/inducing the infringement of the '797 Patent by third party developers in

16   the United States.

17       38.   Apple has solicited/solicits third party developers to submit App to its App Store.

18   To this end, Apple has offered/offers Software Development Kit to third part developers for

19   developing application programs for to be sold exclusively at Apple's App Store, and executable

20   only on Apple's products (including but not limited to "iPod Touches, iPhones, iPads").

21

22

23

24

25

26

27

28

FIRST AMENDED CONSOLIDATED COMPLAINT            C 06-06573 SBA            P.10

1

**COUNT III**

**INFRINGEMENT OF U.S. PATENT NO. 6665797**

**BY APPLE'S VIRTUAL INTERNET STORES AND PRODUCTS**

39.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-22 of this Complaint as though fully set forth herein.

40.     Apple owns and operates a number of virtual Internet Stores, one of them called as "iTunes Store".



41.     Apple has installed/installs a "iTunes Store" application program (directly or indirectly through third party manufacturers) in each of its iProducts ("iPod Touches, iPhones, and iPads"), before sold to users.

42.     Apple has distributed/distributes an "iTunes Store" program through its website http://www.apple.com, for use on user computers, to create a virtual iTunes Store on the screen thereof.

43.     The "iTunes Store" application programs or programs are for use by the users of Apple's iProducts ("iPod Touches, iPhones, and iPads") or computers with the "iTunes Store" program installed, to access to Apple's Internet servers and create a virtual iTunes Store on the screen of the iProducts or computers with the "iTunes Store" program installed.

44.     Apple sells digital items (including but not limited to, sound tracks, albums, videos, movies) through the iTunes Store.

45.     Apple, through the iTunes Store, has required/requires users to submit information of their financial account, to open accounts with Apple, and each Apple account can be accessed by using a respective Apple ID and Password. The financial account may be a credit card or debit card account and the information submitted is for authorizing Apple to receive payment from the financial account.

46.     The Apple ID and Password is for use by an account holder to authorize Apple to make use of the financial account information he/she submitted, to receive payment from his/her financial account, for purchasing digital items from the iTunes Store.

47.     Once an account holder has purchased a digital items, he/she may download the same digital item from the iTunes Store, to any iProduct or computer with the "iTunes Store" program installed, without re-purchasing the digital item, this is done by submitting his/her Apple ID and Password of the account used for making the purchase, through the iProduct or computer with the "iTunes Store" program installed, to Apple, for identity verification.

48.     The purchased digital item cannot be used on an iProduct or computer with the "iTunes Store" program installed, other than the one used for making the purchase, unless the iProduct or computer with the "iTunes Store" program installed is authorized to play the digital item. To authorize an iProduct or computer with the "iTunes Store" program installed, one has to submit his/her Apple ID and Password of the account used for making the purchase, through the iProduct or computer with the "iTunes Store" program installed, to Apple, for identity verification. Apple doesn't charge the account for the authorization.

49.     The DRM technology used in protecting the digital items purchased from iTunes Store is Fairplay.

50.     Apple has engaged/is engaging in making and using Digital Rights Management (DRM) technologies, including but not limited to, servers of its Internet virtual stores including "iTunes Store", for practicing the methods covered by the '797 patent, for protecting from unauthorized use, digital items offered for sale or sold.

51.     Apple has engaged/is engaging in importing, offering for sale, and selling in the United States, its iProducts and other electronic products with DRM technologies, for practicing the methods covered by the '797 patent, for protecting from unauthorized use, digital items offered for sale or sold.

52.     Apple, by using the '797 patented invention, has without difficulty, successfully built up its iTunes Store as one of the greatest Internet Business, while inflicting irreparable harm to Plaintiff.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 6665797

## BY MUSICMATCH

53.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-22 of this Complaint as though fully set forth herein.

54.    MusicMatch (later rebranded as Yahoo!Music) owns/has owned and operates/has operated an Internet Virtual Store, accessible at http://www.MusicMatch.com.

55.    MusicMatch sold/provided subscription service of digital items, including but not limited to, sound tracks, through its website http://www.MusicMatch.com or MusicMatch Internet Virtual Store.

56.    MusicMatch, through its website http://www.MusicMatch.com, required users to open accounts with MusicMatch and submit information of their financial account, such as credit account, to MusicMatch, in order that the users can purchase digital items.

57.    Each MusicMatch account can be signed in to with information including a password.

58.    Upon receiving the correct account information (including a password) of a MusicMatch account, MusicMatch is authorized by the MusicMatch account holder, to make use of the financial account information the MusicMatch account holder previously submitted to MusicMatch, to receive payment from his/her financial account, so that the MusicMatch account holder can purchase digital items or pay for subscription service available at MusicMatch's website, by using the MusicMatch account information as a means for authorizing payment.

59.    Once a MusicMatch account holder has purchased a digital item from its virtual store, he/she may download the same digital item from the MusicMatch Store, to any computer with MusicMatch Jukebox (a software music player) installed, without re-purchasing the digital item, this is done by submitting his/her MusicMatch account information including the password of the account used for making the purchase, through the computer with MusicMatch Jukebox installed, to MusicMatch, for identity verification.

60.     The purchased digital item cannot be used on a MusicMatch Jukebox installed device other than the one used for making the purchase, unless the MusicMatch Jukebox installed device is authorized to play the digital item. To authorize a device, one has to submit the MusicMatch account information including the password of the account used for making the purchase, through the device with MusicMatch Jukebox installed, to MusicMatch, for identity verification. MusicMatch doesn't charge the account for the authorization.

61.     MusicMatch, upon information and belief, engaged in making and using Digital Rights Management (DRM) technologies, including but not limited to, servers of its MusicMatch virtual Store, for practicing the methods covered under the '797 Patent, for protecting from unauthorized use, digital items offered for sale or sold at its virtual Store.

62.     MusicMatch, upon information and belief, offered free trial services, including but not limited to free trial of its "MusicMatch On Demand" subscription service, to users, through its website http://www.MusicMatch.com.

63.     MusicMatch, upon information and belief, required users to submit to MusicMatch their financial account information, such as credit card account information, and verified the validity of the financial account information with the corresponding respective financial institutions where the financial accounts are open.

64.     MusicMatch, upon information and belief, allowed users who can submit valid financial account information, to have free trials. The user will have a MusicMatch account created.

65.     MusicMatch, upon information and belief, a user may access to the "free trial" service, by visiting its website http://www.MusicMatch.com and signing in with their MusicMatch account information including their respective passwords.

66.     MusicMatch, upon information and belief, has using the patented user identity verification methods covered under the '797 patent in suit, to require users to submit to MusicMatch their financial account information, for verifying the real identities of users by verifying the validity of their financial account information, so as to on one hand, allow users to have free trials, with a view to turning a potential customer into a paying one, and on the other

FIRST AMENDED CONSOLIDATED COMPLAINT          C 06-06573 SBA          P.14

1    hand, preventing the users from repeatedly using the free trial services by submitting MusicMatch

2    fake financial account information.

3         67.    MusicMatch had been given notice by Plaintiff of the '797 Patent and its above-

4    mentioned infringement activities. MusicMatch continued to infringe the '797 Patent.

5         68.    MusicMatch's infringement of the '797 Patent is willful and deliberate, justifying

6    an increase of damages of up to three times under 35 U.S.C. § 284.

7         69.    MusicMatch's infringement of the '797 Patent is exceptional and entitles Plaintiff

8    to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285, should

9    Plaintiff pro se obtains an attorney in the future.

10        70.    MusicMatch, by using the '797 patented invention, has once successfully built up

11   its virtual Store as one of the leading Internet Movie Distributors, while inflicting irreparable

12   harm to Plaintiff.

13

14                                      **COUNT V**

15                   **INFRINGEMENT OF U.S. PATENT NO. 6665797 BY SNE**

16        71.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-22 of

17   this Complaint as though fully set forth herein.

18        72.    SNE (formerly "Sony Connect, Inc.") sells/has sold/sold digital items, including

19   but not limited to, sound tracks, videos and games, through its website

20   http://www.SonyEntertainmentNetwork.com or Internet Virtual Store "Connect", etc.

21        73**.**   SNE, through its website http://www.SonyEntertainmentNetwork.com or other

22   Internet Virtual Store of SNE, has required/requires users to open accounts with SNE and submit

23   information of their financial account, such as credit account, to SNE, in order that the users can

24   purchase digital items (sound tracks, videos, games etc).

25        74.    Each SNE account can be signed in to with information including a password.

26        75.    Upon receiving the correct account information (including a password) of a SNE

27   account, SNE is authorized by the SNE account holder, to make use of the financial account

28   information the SNE account holder previously submitted to SNE, to receive payment from

1    his/her financial account, so that the SNE account holder can purchase digital items at SNE's

2    website or other Internet Virtual Store of SNE, by using the SNE account information as a means

3    for authorizing payment.

4         76.    Once an SNE account holder has purchased a digital item from SNE's website or

5    other Internet Virtual Store of SNE, SNE allows the SNE account holder to re-download the same

6    digital item from its website or other Internet Virtual Store of SNE, without repaying for/re-

7    purchasing the digital item.

8         77.    The purchased digital item cannot be used on a SNE digital rights management

9    technology (DRM) supporting Device other than the one used for making the purchase, unless the

10   Device is authorized to play the digital item. To authorize a Device, one has to submit the SNE

11   account information including the password of the account used for making the purchase, through

12   the Device, to SNE, for identity verification. SNE doesn't charge the account for the authorization.

13        78.    SNE, upon information and belief, is offering, has engaged/is engaging in making

14   and using Digital Rights Management (DRM) technologies, including but not limited to, servers

15   of its website or other Internet Virtual Store of SNE, for practicing the methods covered under the

16   claims of the '797 Patent, for protecting from unauthorized use, digital items offered for sale or

17   sold at the website http://www.SonyEntertainmentNetwork.com or other Internet Virtual Store of

18   SNE.

19        79.    SNE has engaged/is engaging/assisting in importing, offering for sale, and selling

20   in the United States, SNE digital rights management technology (DRM) supporting Device,

21   including but not limited to, Playstation®network ("PSN"), Playstation mobile, PlayStation®3

22   computer entertainment systems, PSP® (PlayStation®Portable) systems, PlayStation®Vita

23   systems, PlayStation-Certified mobile devices, Bravia® television, Sony blu-ray® disc player, for

24   practicing the methods covered under the claims of the '797 patent, for protecting from

25   unauthorized use, digital items offered for sale or sold at the website

26   http://www.SonyEntertainmentNetwork.com or other Internet Virtual Store of SNE.

27

28

1     80.     SNE, upon information and belief, is offering, has offered or continues to offer,

2 free trial services, to users, through its website http://www.SonyEntertainmentNetwork.com or

3 other Internet Virtual Store of SNE.

4     81.     SNE, upon information and belief, requires/has required users to submit to SNE

5 their financial account information, such as credit card account information, and verifies/has

6 verified the validity of the financial account information with the corresponding respective

7 financial institutions where the financial accounts are open.

8     82.     SNE, upon information and belief, allows/has allowed users who can submit valid

9 financial account information, to have free trials. The user will have a SNE account created.

10     83.     SNE, upon information and belief, a user may access to the "free trial" service, by

11 visiting SNE's website http://www.SonyEntertainmentNetwork.com or other Internet Virtual

12 Store of SNE and signing in with their SNE account information including their respective

13 passwords.

14     84.     SNE, upon information and belief, is using the patented user identity verification

15 methods covered under the '797 patent in suit, to require users to submit to SNE their financial

16 account information, for verifying the real identities of users by verifying the validity of their

17 financial account information, so as to on one hand, allow users to have free trials, with a view to

18 turning a potential customer into a paying one, and on the other hand, preventing the users from

19 repeatedly using the free trial services by submitting SNE fake financial account information.

20     85.     SNE has been given notice by Plaintiff of the '797 Patent and its above-mentioned

21 infringement activities. SNE has been and still is infringing the '797 Patent, and will continue to

22 do so unless enjoined by this Court.

23     86.     SNE's infringement of the '797 Patent is willful and deliberate, justifying an

24 increase of damages of up to three times under 35 U.S.C. § 284.

25     87.     SNE's infringement of the '797 Patent is exceptional and entitles Plaintiff to

26 attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285, should

27 Plaintiff pro se obtains an attorney in the future.

28

88.     SNE, by using the '797 patented invention, has built up its virtual Store as one of the Internet Movie Distributors, while inflicting irreparable harm to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

89.     That Defendants be held to have infringed the '797 patent.

90.     That Defendants, their directors, officers, agents, servants, employees and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing Plaintiff's patent.

91.     That judgment be entered for Plaintiff against Defendants, for Plaintiff's actual damages according to proof, and for any additional profits attributable to infringements of Plaintiff's patent.

92.     That judgment be entered for Plaintiff against Defendants, for statutory damages based upon Defendants' acts of patent infringement and for its other violations of law.

93.     That Defendants be required to account for all gains, profits, and advantages derived from its acts of infringement and for its other violations of law.

94.     That judgment be entered for Plaintiff and against Defendants, for trebling of the damages awarded for willful and deliberate patent infringement, justifying an increase of damages of up to three times under 35 U.S.C. § 284.

95.     That Plaintiff has judgment against the Defendants for Plaintiff's costs and attorney's fees (should Plaintiff be represented by an attorney later), under 35 U.S.C. § 285.

96.     That the Court grant such other, further, and different relief as the Court deems proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

1    Signed this 21st day of February, 2013.

2                                                   /s/ Ho Keung TSE
                                                    Ho Keung TSE
3                                                   P.O. Box 80306
                                                    Cheung Sha Wan Post Office
4                                                   Hong Kong
                                                    tse2012@sina.com
5                                                   608.268.3667

6
                                                    Plaintiff Pro Se
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28